Van Brunt, P. J.
The learned found as matters of fact that on the 17th day of April, 1880, Mary T. Hatten, who was at that time and at all times thereafter until her death, a resident of the city of New York, duly made, published and declared in the presence of two witnesses her last will and testament, which witnesses in her presence and in the presence of each other subscribed their names to such instrument as attesting witnesses.
That Mary T. Hatten at the time of the execution of the instrument was of sound and disposing memory and free from restraint, and that no fraud or undue influence was exercised upon her in reference to the making or execution of the will.
The surrogate also found that the decedent never saw the paper propounded for probate as her last will and testament until after it was presented to her for execution.
There was no proof that the instrument was prepared in pursuance of her instructions, or that it was read to her on the occasion of its execution.
The question presented, therefore, is, was there sufficient evidence to justify a finding that the testatrix knew the contents of this paper at the time she executed it as her will.
The surrogate in his opinion states that if the decedent’s ability to read and write had not been established to his satisfaction, he would have pronounced against probate, but that it is by no means clear that she then read it herself.
The evidence that the testatrix ever had an opportunity to read the will, is of the most meagre character.
The will was handed to the decedent in the presence of the witnesses; she was then on her sick bed, and she sat up in bed when she signed the will and after signing lay down again.
The witness Hobbie testified that the decedent was not a cultivated woman—not a reading woman; that he did not know whether she could read, absolutely; that he would not swear that she read it; she looked at it as she was signing it.
*21 The other witness to the will swears that she had the paper before her just long enough to sign it, that he could not tell whether she read it or not, that his impression was that she did not read it.
It is very true that if the decedent had been accustomed to the reading of writing she might have had time to read over the short will in question. But the evidence seems to show her to have been a woman little accustomed to the reading of writing, and if she read the paper she must have given such attention to it as would have been noticed those who were as witnesses,
There being no proof of instructions, no proof that the decedent ever saw or had possession of the will before the time of execution; the fact that it was produced by one of the parties interested in its execution and that she only had possession of the paper long enough to sign it, that it was not read to her and that none of the witnesses prove that she read it herself, leads to the conclusion that there is an utter want of evidence tending to show that the decedent ever had an opportunity to become acquainted with the contents of the will in question before execution. There is evidence perhaps that she read the alleged will after-wards, but unless she knew the contents of the paper at the time of its attempted execution no valid execution could be made
It would seem, therefore, that the decree of the surrogate must be reversed and the issues involved in this appeal should be tried by a jury in the court of common pleas
Judgment of surrogate reversed, and new trial ordered before a jury in the court of common pleas.
Daniels and Bartlett, JJ., concur.